IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| GERARDO DUENAS ARCE, | |
| Petitioner, | **8:25CV520** |
| vs. | |
| DONALD J. TRUMP, in their official capacity as President of the United States; KRISTI NOEM, in their official capacity as Secretary of the United States Department of Homeland Security; ALLEN GILL, in their official capacity as Field Office Director of Omaha office of United States Immigration and Customs Enforcement; PAMELA BONDI, in their official capacity as Attorney General of the United States; PETER BERG, in their official capacity as St. Paul Field Office Director for Enforcement and Removal Operations, United States Immigration and Customs Enforcement; CHRIS KLEINBERG, in their official capacity as Dakota County Sheriff, Official of Dakota County Detention Center; and TODD M. LYONS, in their official capacity as Acting Director of the United States Immigration and Customs Enforcement; | **MEMORANDUM AND ORDER** |
| Respondents. | |

This matter is before the Court on Gerardo Duenas Arce's Petition for a Writ of Habeas Corpus (Filing No. 1). The petitioner, being held in the custody of Immigration and Customs Enforcement, alleges that his detention is unlawful. For the reasons set forth below, the petition will be granted.

## BACKGROUND

The petitioner is a forty-two-year-old Mexican citizen who entered the United States in 2001. (Filing No. 1 at 5). He lives in Hawarden, Iowa with his child and parents. (Filing No. 1 at 5). The petitioner was detained following a traffic stop in Sioux City, Iowa on June 24, 2025. (Filing No. 1 at 7). The petitioner was arrested by the Department of Homeland Security (DHS) on June 25, 2025 for being unlawfully present in the United States. Since then, has been in civil detention in the custody of Immigrations and Customs Enforcement (ICE) at the Dakota County Jail in Dakota City, Nebraska. (Filing No. 1 at 3).

Immigration officers determined the petitioner was unlawfully present in the United States through a records check at the jail. (Filing No. 13 at 2). A DHS officer initially found that "pursuant to the authority contained in Section 236 [8 U.S.C. § 1226] of the Immigration and Nationality Act," and part 236 of title 8, Code of Federal Regulations, the petitioner was to be "[d]etained by the Department of Homeland Security" without bond pending a "final administrative decision in [the petitioner's] case." (Filing No. 15-6). DHS then initiated removal proceedings by issuing the petitioner a Notice to Appear. (Filing No. 15-1). The Notice to Appear charged the petitioner as being subject to removal under 8 U.S.C § 1182(a)(6)(A)(i). (Filing No. 15-1 at 1).

The petitioner requested a review of the bond determination before an Immigration Judge. (Filing No. 1 at 7; Filing No. 15-6).  The bond redetermination hearing took place on August 5, 2025. (Filing No. 1-2 at 3; Filing No. 15-4). Before the Immigration Judge, DHS argued that the immigration court lacked jurisdiction to redetermine the petitioner's bond because he was an "applicant for admission" to the United States under 8 U.S.C. § 1225(a). DHS's argument was based on INA § 235(b)(2)(A) (8 U.S.C. § 1225(b)(2)(A)), which provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained" for a proceeding under section 240 [8 U.S.C. § 1229a]." *Id.* (emphasis added). DHS took the position that the petitioner was an alien seeking admission—and ineligible for release on bond—because the petitioner is present in the United States without admission.  (Filing No. 1-2; Filing No. 15-4).

The Immigration Judge rejected that "novel" argument in her written decision. (Filing No. 1-2 at 4; Filing No. 15-4). She noted that "DHS has not historically argued that an Immigration

Judge lacks jurisdiction to consider a bond for aliens who entered without admission." (Filing No. 1-2 at 4; Filing 15-4). The Immigration Judge further indicated she was unaware of DHS making this argument in the last several decades. (Filing No. 1-2 at 4; Filing No. 15-4). The Immigration Judge found that 8 U.S.C. § 1226, not § 1225(b)(2), applied to the petitioner and that she therefore had jurisdiction to redetermine the petitioner's bond request.  (Filing No. 15-4); *see* § 1226(a).

The petitioner prevailed in securing release on bond. At the redetermination hearing, the petitioner submitted evidence that he has been in the United States for almost twenty-five years; has ties to the United States—namely, that his daughter is a United States citizen, his father is a United States citizen, and his mother is a lawful permanent resident; was employed and that his employer indicated he had a strong work ethic and was a great asset to the team; and that he had not been convicted of any crimes of violence against people or property. (Filing No. 1-2 at 5-6; Filing No. 15-4). The Immigration Judge found the petitioner had, however, been arrested two times for driving on a suspended license, but there was no evidence that the petitioner ever attempted to flee prosecution or otherwise escape from authorities. (Filing No. 1-2 at 6; Filing No. 15-4). The Immigration Judge also found that while the petitioner violated immigration law by entering the United States illegally, there was no evidence he committed any other immigration violations. (Filing No. 15-4). The Immigration Judge also noted that it appeared the petitioner was prima facie eligible to seek cancellation of his removal given his time in the United States, lack of disqualifying offenses, and having three qualifying relatives.  (Filing No. 15-4). Accordingly, the Immigration Judge was satisfied that the petitioner was not a danger to the community and set a bond to alleviate any flight risk concerns. (Filing No. 1-2 at 7; Filing 15-4). The Immigration Judge set the petitioner's bond at $10,000.  (Filing No. 1-2 at 7; Filing No. 15-4).  The petitioner's family attempted to post the bond through the bond processing system "ICE CeBonds" but received a denial each time, with the system indicating "bond not permitted."  (Filing No. 1 at 8).

DHS filed a notice of intent to appeal the Immigration Judge's decision the same day it was issued. (Filing No. 15-2). By doing so, DHS triggered an automatic and administratively unreviewable stay of the petitioner's release on bond under 8 C.F.R. § 1003.19(i)(2). (Filing No. 13 at 3; Filing 15-2). The notice of intent to appeal indicates that the stay will "lapse if [ICE] does not file a notice of appeal along with the appropriate certification within ten business days of the issuance of the order of the Immigration Judge . . ." (Filing No. 15-2.)  DHS filed a formal notice

of appeal with the Board of Immigration Appeals on August 5, 2025 along with the required certification. (Filing No. 15-3). The petitioner has therefore remained detained after the Immigration Judge's bond decision due to the automatic stay. (Filing No. 1 at 8). The administrative appeal and removal processes are currently ongoing. The parties are to file their appellate briefs by September 23, 2025 (Filing No. 15-4) and an in-person hearing in immigration court pertaining to his removal proceedings is scheduled for September 25, 2025. (Filing No. 15-5).

The petitioner filed his Petition for Writ of Habeas Corpus in this Court on August 26, 2025. (Filing No. 1). The Court entered an order directing the respondents to show cause why the writ should not be granted the next day. (Filing No. 3). The Federal Respondents[1] timely filed their return on the order to show cause. (Filing No. 13). At the request of the Federal Respondents, the Court permitted the parties to file supplemental briefing addressing the Board of Immigration Appeals' decision in *Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025).[2] (Filing No. 17).   After receiving those briefs, the Court held a hearing on the petition on September 16, 2025.

## STANDARD OF REVIEW

District courts have the power to grant writs of habeas corpus. 28 U.S.C. § 2241(a). The Constitution guarantees that the writ of habeas corpus is available to every individual detained within the United States. *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. Art. I, § 9, cl. 2).   A district court's power includes jurisdiction to hear habeas challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). The burden is on the petitioner to show that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3); *Walker v. Johnston*, 312 U.S. 275, 286 (1941).

---

[1] The Federal Respondents include "all but Dakota County Sheriff Chris Kleinberg[.]" (Filing No. 13 at 5 n.2). While no attorney entered an appearance on Sheriff Kleinberg's behalf, he personally appeared at the hearing. He has not, nor has anyone on his behalf (as he is being sued in his official capacity) filed a return on the Court's August 27, 2025 order to show cause.

[2] There, the Board of Immigration Appeals found that § 1225(b)(2)(A) applies to all applicants for admission, including "aliens who are present in the United States[.]" *Id.* at 220.

## DISCUSSION

The petitioner alleges that the automatic stay provision of § 1003.19(i)(2) violates his due process rights (Filing No. 1 at 30) and the Immigration and Nationality Act itself. (Filing No. 1 at 31). He also alleges that the automatic stay regulation unlawfully exceeds the authority given to the Attorney General by Congress. (Filing No. 1 at 32).

The Federal Respondents do not directly address those arguments. While they acknowledge that the "operative mechanism" of the petitioner's detention is an automatic stay of release on bond under 8 C.F.R. § 1003.19(i)(2), the Federal Respondents argue that the petitioner's confinement is statutorily authorized by 8 U.S.C. § 1225(b)(2). That provision, they say, requires detention throughout the petitioner's entire removal proceedings. (Filing No. 13 at 6). The petitioner responds that § 1226(a) applies. (Filing No. 29 at 6). But the issue of which statute applies here, in the Court's view, is not something the Court has to decide at this time to resolve the issues before it.

Whether § 1225(b)(2) or § 1226(a) applies[3] to the petitioner was the issue before the Immigration Judge. (Filing No. 1-2 at 4). The Immigration Judge found that § 1226(a) applied to the petitioner and ordered that he be released on bond. Therefore, the petitioner is detained only

---

[3] The Court notes, however, that the greater weight of federal authority so far rejects the government's reading of Section 1225(b)(2). *See, e.g., Pizzaro Reyes v. Raycraft*, 2025 WL 2609425, at *7 (E.D. Mich. Sept. 9, 2025) *Gomes v. Hyde*, 2025 WL 1869299 at *5–6 (D. Mass. July 7, 2025); *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1255-1260 (W.D. Wash. 2025); *Vasquez Garcia v. Noem*, No. 25-cv-02180 (S.D. Ca. Sept. 3, 2025); *Lopez-Campos v. Raycroft*, 2025 WL 2496379; *Martinez v. Hyde*, No. 25-11613, 2025 WL 2084238 (D. Mass. July 24, 2025); *Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM (C.D. Cal. July 28, 2025); *Rosado v. Figueroa et al.*, No. 2:25-cv-02157-DLR, 2025 WL 2337099 (D. Ariz. Aug. 11, 2025); *Lopez Benitez v. Francis et al.*, No. 1:25-cv-05937-DEH, 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025); *Gonzalez et al. v. Noem et al.*, No. 5:25-cv-02054-ODW-BFM (C.D. Cal. Aug. 13, 2025); *dos Santos v. Noem*, No. 1:25-cv-12052-JEK, 2025 WL 2370988 (D. Mass. Aug. 14, 2025); *Maldonado v. Olson*, No. 0:25-cv-03142-SRN-SGE, 2025 WL 2374411 (D. Minn. Aug. 15, 2025); *Romero v. Hyde, et al.*, No. 1:25-cv-11631-BEM, 2025 WL 2403827 (D. Mass. Aug. 19, 2025); *Benitez et al. v. Noem et al.*, No. 5:25-cv-02190-RGK-AS (C.D. Cal. Aug. 26, 2025); *Kostak v. Trump et al.*, No. 3:25-cv-01093-JE-KDM, 2025 WL 2472136 (W.D. La. Aug. 27, 2025). So too within this District. *See, e.g., Lorenzo Perez v. Kramer et al.*, No. 4:25CV3179, 2025 WL 2624387 (D. Neb. Sept. 11, 2025) (Bataillon, J). The Federal Respondents point the Court to one case they say supports their position. *See Pena v. Hyde*, 2025 WL 2108913 (D. Mass. July 28, 2025). But the issue in that case was not whether § 1225 or § 1226 applied—indeed, the court did not even discuss § 1226(a).

through operation of the automatic stay regulation based on the Immigration Judge's finding that § 1226(a) applies to him. The applicability of § 1225(b)(2), as applied to *this* petitioner, is not before the Court. Rather, the petitioner's continued detention presents the narrower question of the lawfulness of DHS's invocation of the automatic stay pursuant to 8 C.F.R. § 1003.19(i)(2). The Federal Respondents' arguments regarding § 1225(b)(2) are now before the Board of Immigration Appeals, who will ultimately decide this issue.

As the Federal Respondents pointed out at the hearing before this Court, the Board of Immigration Appeals' decision in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (B.I.A. 2025) means that the Immigration Judge's order releasing the petitioner on bond will likely be reversed. While that may very well occur, because the Board of Immigration Appeals has not ruled on DHS's appeal at this point, the current posture of the case is that an Immigration Judge ordered the petitioner to be released on bond under § 1226(a). The petition challenges *the automatic stay regulation,* not the statutory detention framework. Thus, the live issue before this Court in its habeas jurisdiction is whether Section 1003.19(i)(2) provides authority for the Federal Respondents to unilaterally detain the petitioner after they have been granted release pursuant to a bond by a duly appointed Immigration Judge[4]—and whether the automatic stay regulation violates the petitioner's due process rights. *See Herrera v. Knight*, 2025 WL 2581792, at *7 (D. Nev. Sept. 5, 2025). The Court will therefore proceed to evaluate the petitioner's procedural due process claim.

"[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). While certain constitutional protections do not extend outside the "geographic borders" of the United States, "legal circumstances change" as soon as a noncitizen "enters the country." *Id.; see also A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025) ("'[T]he

---

[4] This will not always be so, however. In cases where the Immigration Judge finds that a similarly situated noncitizen is *not* entitled to be released on bond or otherwise, the issue of whether § 1252(b)(2) or § 1226(a) applies would be "[t]he central question" to a habeas petition brought by that noncitizen. *Lopez-Campos,* 2025 WL 2496379, at *5. The automatic stay regulation in a case like that would not be invoked (or at issue in federal court), and the relief sought by the petitioner would include, at a minimum, a bond redetermination hearing. *E.g., Pizarro Reyes,* 2025 WL 2609425, at *8.

Fifth Amendment entitles aliens to due process of law in the context of removal proceedings.'")
(quoting *Trump v. J.G.G.,* 145 S. Ct. 1003, 1006 (2025) (per curiam)).

To determine whether civil detention violates a detainee's due process rights, courts apply
the three-part test in *Mathews v. Eldridge*, 424 U.S. 319 (1976). Under *Mathews,* courts consider
(1) the private interest that will be affected by the official action; (2) the risk of an erroneous
deprivation of such interest through the procedures used, and the probable value, if any, of
additional or substitute procedural safeguards; and (3) the Government's interest, including the
function involved and the fiscal and administrative burdens that the additional or substitute
procedural requirement would entail. *See id.* at 335.

Here, all three factors favor the petitioner. *First,* he has a significant private interest at
stake. A person's interest in freedom from physical detention is "the most elemental of liberty
interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see also Zadvydas*, 533 U.S. at 690
("Freedom from imprisonment—from government custody, detention, or other forms of physical
restraint—lies at the heart of the liberty that [the Due Process] Clause protects."). The petitioner
is experiencing all the deprivations that come with physical detention, including separation from
his family, the inability to work to support his family, and the "inhibit[ion] [of] his removal
defense" in the administrative proceedings. (Filing No. 1 at 10).

The petitioner is facing a possibly lengthy detention under the automatic stay regulation.
That regulation became the basis for his detention on August 5, 2025, when DHS filed notice of
intent to appeal. (Filing No. 15-2); *see* 8 C.F.R. §§ 1003.19(i)(2), 1003.6(c)(1). DHS filed its notice
of appeal the same day (Filing No. 15-3), starting the next phase of detention—one that lasts ninety
days[5] pending the Board of Immigration Appeals' decision. *See id.* §§ 1003.19(i)(2), 1003.6(c)(4).
The petitioner's period of detention may last even longer, because the automatic stay regulation
gives the government the power to unilaterally extend his detention. If the Board of Immigration
Appeals does not resolve the appeal[6] within the ninety-day period, DHS can seek "a discretionary

---

[5] Plus an additional twenty-one days, if the Board of Immigration Appeals grants a motion
by the alien for an enlargement of the 21–day briefing schedule. 8 C.F.R. § 1003.6(c)(4).

[6] The petitioner's counsel suggested at the hearing that the government is invoking the
automatic stay more frequently and that the number of appeals to the Board of Immigration
Appeals has more than tripled. The petitioner's counsel indicated that the average time for a

stay" for an additional thirty days. 8 C.F.R. § 1003.6(c)(5). If the Board of Immigration Appeals authorizes a release, denies the motion for a discretionary stay, or fails to act on such a motion before the automatic stay period expires, the noncitizen's release is automatically stayed for five business days. *See id.* § 1003.6(d). If, within that five-day period, the Secretary of Homeland Security or another designated official refers the case to the Attorney General pursuant to 8 C.F.R. § 1003.1(h)(1), the noncitizen's release is stayed for an additional fifteen business days. *Id.* Once such a referral is made, the Attorney General can extend the stay *indefinitely* by ordering a discretionary stay pending disposition of the case. *Id.* § 1003.6(d). The petitioner's detention, then, could last for months or years under the automatic stay regulation, notwithstanding his significant interest in freedom from physical confinement. The first *Mathews* factor therefore favors the petitioner.

*Second,* the risk of an erroneous deprivation of the petitioner's interest in being free from arbitrary confinement through the procedures outlined in the automatic stay regulation is high. The only individuals adversely affected by the automatic stay regulation "are those detainees who have already prevailed in a judicial hearing." *Gunaydin v. Trump*, 2025 WL 1459154, at *8 (D. Minn. May 21, 2025). That is, the regulation only confers on agency officials the right to invoke an automatic stay when they lost before an Immigration Judge. Thus, the challenged regulation permits an agency official—who is also a participant in the adversarial process—to unilaterally override the immigration judge's decisions. "Such a rule is anomalous in our legal system[.]" *Id.; see also Sampiao v. Hyde*, 2025 WL 2607924, at *10 (D. Mass. Sept. 9, 2025) (noting that the automatic stay regulation "allows the government to bypass its burden of proof at bond hearings and usurp the role of the Immigration Judge."). In other words, the automatic stay regulation includes no requirement that the agency official invoking it consider any individualized or particularized facts. *See Gunaydin*, 2025 WL 1459154, at *8. Nor does it provide any procedures for a party to request independent review of the reasons for the stay in the first instance, or at any time while it is in effect.

It is true, as the Court discussed with the Federal Respondents at the hearing, that the automatic stay regulation requires a "senior legal official" at the Department of Homeland Security

---

decision from the Board of Immigration Appeals was seven months. With the number of appeals more than tripling, the average time for a decision will also likely increase.

to certify "that they approve the filing of the notice of appeal, that the senior legal official is satisfied that the evidentiary record supports the contentions justifying continued detention, and the legal arguments are warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing precedent or the establishment of new precedent." 8 C.F.R. § 1003.6(c)(1)(ii). But that certification does not mitigate the concerns outlined above. The certification is made by a senior DHS legal official who has necessarily adopted the losing position taken by their agency before the Immigration Judge. That does not inspire much confidence that every appeal really is meritorious. *See Gunaydin*, 2025 WL 1459154, at *9 (noting that the certification requirement "merely restates an attorney's existing ethical obligations").

The record in this case shows why. DHS's one-page explanation asserts that the petitioner is an "applicant for admission" subject to mandatory detention under § 1225(b)(2)(A) based on a reading of Supreme Court precedent that is, to say the least, not without some doubt. (Filing No. 15-3 at 5). *See Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018) (recognizing that "U.S. immigration law authorizes the Government to detain certain aliens *seeking admission into the country* under §§ 1225(b)(1) and (b)(2) . . . [and] to detain certain aliens *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c)") (emphasis added); *Lopez-Campos v. Raycraft*, 2025 WL 2496379, at *8 (E.D. Mich. Aug. 29, 2025) ("There can be no genuine dispute that Section 1226(a), and not Section 1225(b)(2)(A), applies to a noncitizen who has resided in this country for over twenty-six years and was already within the United States when apprehended and arrested during a traffic stop, and not upon arrival at the border.").

Further, the automatic stay regulation reverses the traditional burdens and standards governing requests for stays pending appeal. In federal court, the party seeking a stay of a trial court order bears the burden of demonstrating that a stay is warranted under the circumstances of the case. *See Nken v. Holder*, 556 U.S. 418, 433-34 (2009). The automatic stay regulation absolves the government of that burden—the stay is, after all, "[a]utomatic[.]" 8 C.F.R. § 1003.19(i)(2). To meet its burden in federal court, the party seeking a stay of a trial court order must, among other things, make "a strong showing" that they are likely to succeed on the merits of their appeal and likely to be irreparably injured without a stay. *Nken*, 556 U.S. at 434 (quotation marks omitted). None of that is required by the automatic stay regulation. DHS need not demonstrate any likelihood of success on the merits of its appeal to the Board of Immigration Appeals or any risk of irreparable

injury. The regulation simply gives the losing party a stay as a matter of right. *See Sampiao,* 2025 WL 2607924, at *11. That is a far cry from the typical rule that "a stay is an intrusion into the ordinary processes of administration and judicial review" and is "not a matter of right, even if irreparable injury might otherwise result to the appellant[.]" *Nken,* 556 U.S. at 427 (citation modified).

Finally, there is high value in additional procedural safeguards. The regulation itself provides for an alternative to the automatic stay that looks much more like the traditional process of requesting a stay from an appellate court. 8 C.F.R. § 1003.19(i)(1) vests the Board of Immigration Appeals with the authority to stay the order of an immigration judge redetermining the conditions of custody of a noncitizen when the DHS appeals the custody decision or on its own motion. *See id.* DHS, for its part, "is entitled to seek a *discretionary stay* (whether or not on an emergency basis) from the Board [of Immigration Appeals] in connection with such an appeal at any time." *Id.* (emphasis added). A discretionary stay requires the Board of Immigration Appeals to independently review the motion—and the reasons for it—in determining if a stay is appropriate. *Id.* § 1003.19(i)(1). That process would alleviate the concerns the Court outlined as to the automatic stay while furthering the government's interest in preventing an erroneous release. The second *Mathews* factor also favors the petitioner.

*Third,* and final, the government's interest in detaining the petitioner under these circumstances, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail, is low. At the hearing, the Federal Respondents suggested that their interest here is keeping persons who are unlawfully present but never sought admission detained pending removal. But that argument merely highlights the main defects the Court identified in the automatic stay regulation—it allows the government to continue detaining someone, like the petitioner, who has convinced an Immigration Judge that he should be released on bond following a hearing and assessment of the evidence.

The Court acknowledges that the government has a legitimate interest in ensuring noncitizens' appearance at removal proceedings and preventing harms to the community. *Zadvydas,* 533 U.S. at 690. But here, the Immigration Judge found that the petitioner did not pose those risks. (Filing No. 1-2 at 6). At the hearing, the Federal Respondents did not dispute the Immigration Judge's findings. Nor did they suggest that implementing the Immigration Judge's

bond order pending review from the Board of Immigration Appeals or pursuing the additional or substitute procedural requirement—that is, seeking a discretionary stay from the Board of Immigration Appeals—would impose administrative or financial costs. *See* 8 C.F.R. § 1003.19(i)(1). The third *Mathews* factor therefore favors the petitioner.

In sum, each of the three *Mathews* factors favor the petitioner. The Court therefore concludes that, under these circumstances and as applied to him, the petitioner's detention under the automatic stay regulation violates his procedural due process[7] rights.

Accordingly,[8]

**IT IS ORDERED:**

1.  Gerardo Duenas Arce's Petition for Writ of Habeas Corpus (Filing No. 1) is granted.

2.  Respondents shall immediately return the petitioner to ICE custody and immediately release the petitioner upon his posting the ordered bond, with no additional conditions beyond those imposed by the Immigration Judge at the bond redetermination hearing.

3.  The parties are ordered to file a joint status report by 5:00 p.m. on September 19, 2025. confirming that the petitioner has been released.

4.  A separate judgment will be entered.

Dated this 18th day of September, 2025.

BY THE COURT:

Susan M. Bazis
United States District Judge

---

[7] The Court need not—and does not—reach the petitioner's other constitutional, statutory, and ultra vires challenges to the automatic stay regulation because it is not necessary to do so in light of the Court's findings as to his procedural due process claim. *See Sampiao,* 2025 WL 2607924, at *12. The Court also advised the petitioner at the hearing that it would not consider any Fourth Amendment claims he raised for the first time in his reply brief.

[8] After the hearing, the Federal Respondents pointed the Court to another case they say supports their position. *See S.Q.D.C. v. Bondi*, 2025 WL 2617973 (D. Minn. Sept. 9, 2025). As they acknowledged, however, the government prevailed there on grounds the Federal Respondents did not raise here.